THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.*
ERNEST W. WIDER *et al.*

*v.*

TIMOTHY CANTY.

55     33
94a  ²578

1. CONSTITUTIONAL LAW—*power to create a debt against a city without its consent—act of 1867, " to establish a police force for the city of East St. Louis."* The decision in the case of *Lovingston* v. *Wider et al.* 53 Ill. 302, holding the act of 1867, providing for the appointment of police commissioners for the city of East St. Louis to be unconstitutional, so far as it authorizes such commissioners to issue certificates of indebtedness against the city without its consent, is adhered to.

2. CITY MARSHAL *of the city of East St. Louis—legality of his appointment.* The city council of the city of East St. Louis have power, under the city charter of 1869, to appoint a marshal for the city, who, as the executive officer of the city court, is authorized to execute all process issuing therefrom. This power in the city council exists independently of any question relating to the constitutionality of the act of 1867 providing for the organization of a police force in that city without the intervention of the corporate authorities, because, even if the two acts are in conflict in that regard, the act of 1869, being the later expression of the legislative will, must prevail.

3. FINAL JUDGMENT *on demurrer—in proceedings by quo warranto.* In a proceeding by information in the nature of a *quo warranto*, on a demurrer to the return thereto being overruled, no leave being asked to traverse the return or to amend the information, it is proper to render final judgment for the defendant.

APPEAL from the Circuit Court of St. Clair county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

At the August term, 1870, of the court below, upon leave, an information was filed by the State's attorney, in the nature of a *quo warranto*, in which it was alleged that Ernest W. Wider, Henry Schall and R. L. Barrowman, were at that time the acting and duly qualified police commissioners of the city of East St. Louis, having been appointed as such under the act

3—55TH ILL.

of February 25, 1867, entitled "an act to establish a police force for the city of East St. Louis."

It was further alleged, that said commissioners, acting under the law of 1867, and the act of March 28, 1869, amendatory thereof, had appointed a sufficient police force, and exercised all the police power of said city.

The information further states that Timothy Canty, well knowing the premises, had unlawfully usurped police powers in said city, pretending to be authorized thereto by certain ordinances of the city council, and that he was acting under the direction of the mayor of the city, and had intruded into the office of police officer, made arrests and undertaken to keep the peace, and disregarded the orders of the police commissioners, and, in every respect, held himself out as controlling the police force of the city, and this without any appointment from said board of police, and without authority.

The defendant, Canty, in his return to the information, alleged that under the act of March 26, 1869, entitled "an act to reduce the charter of the city of East St. Louis, and the several acts amendatory thereto, into one act, and to revise the same," the city council had power to make, pass, publish, amend and repeal all ordinances, rules and sanitary regulations, and to enforce the observance of all such ordinances, for the good government, peace and order of said city, and to punish the violation thereof by fines, penalties and forfeitures. The defendant further alleged that by the provisions of said act of 1869, the city council were authorized to appoint a marshal for said city, who, with his deputies, should be the executive officers of the city court of said city; and that such court was given exclusive jurisdiction in all cases arising in the city under the charter, or any by-law or ordinance made in pursuance thereof.

It is further alleged in the return, that on the second day of May, 1870, the city council, in pursuance of the authority conferred upon them by the act of 1869, appointed the said Canty

to the office of city marshal, and that he was duly commissioned and qualified as such; and that his acts in the exercise of the powers and performance of the duties of that office, were the supposed usurpations of office in said information alleged.

The defendant also averred that the said supposed police commissioners had wholly failed to exercise police powers in said city, and to provide a police for the same for more than forty days then last past.

To this return a demurrer was filed, which was sustained to the information, and the proceeding dismissed, with costs.

Thereupon, the relators appealed.

Messrs. G. & G. A. KŒRNER, for the appellants.

We respectfully ask the court to review their decision in the case of *Lovingston* v. *Wider et al.* 53 Ill. 302, involving the question of the constitutionality of the act of 1867, under which the police commissioners of the city of East St. Louis claim to act.

The ruling in that case, that the provisions of the act, in attempting to confer upon the commissioners the power, in a certain contingency, to issue certificates of indebtedness against the city, was unconstitutional, seems to have been based upon the case of *McCagg* v. *The Mayor etc. of Chicago*, 51 Ill. 17.

We insist the questions arising under the act of 1867 are quite different from those presented in the McCagg case. In that case, the tax indirectly imposed upon the city of Chicago, without the assent of the city, was *exclusively* for a municipal purpose, and that of an ornamental character merely, and the court may have properly considered the fifth section of the ninth article of the constitution (of 1848) as a limitation on the legislature to vest the power of taxation for *corporate* purposes elsewhere than in the *corporate* authorities themselves.

But under this act, in the Lovingston case, there was no question of taxation at all. No *new tax* is proposed, as was indirectly attempted in the McCagg case, and also in the case

of *Harward* v. *The St. Clair and Monroe Levee and Drainage Co.* 51 Ill. 130. The city of East St. Louis had previously maintained its police force, and it was to do the same thing thereafter. The board of police, however, were to disburse the necessary fund, and were to estimate the probable amount. It was to be paid, by the express language of the law, out of the *general fund.* Sec. 16, Act 1867—Private Laws, vol. 2, p. 483; *City of East St. Louis* v. *Wider,* 46 Ill. 351.

The objection that the power of estimate was unlimited, and therefore conferred power of unlimited taxation, is not tenable, as an unreasonable demand would have entitled the city council to refuse compliance, and would have entitled it to remedial action by the courts. The salaries were fixed by law, the number of officers prescribed by law, and of course the city council would never have been compelled by the courts to make unreasonable allowances. The idea that these police commissioners were levying taxes upon the people for municipal purposes, seems to rest, when the law is properly construed, upon no practical foundation. This part of the law is an exact copy of a similar act passed by the legislature of Missouri. Section 15 of act creating a Board of Police Commissioners for the city of St. Louis, March 27, 1861. And no question has ever been made, in spite of great party opposition at the time, as to the power of said commissioners to issue scrip.

But the case of Lovingston, instead of being embraced by the decision in the McCagg case, is expressly excluded by it. The court says: "There nevertheless may be cases where the legislature, without the consent of the corporate authorities, might impose taxes, local in their character, if required by the general good government of the State, because such taxes would not be merely and only for corporate purposes." The court then instance the establishment of a police force for a city. "But the tax authorized by the park law," the court continues, "is for a purpose purely local and corporate, having no other element about it. The park commissioners are made mere agents to supersede the proper authorities of the city,

who, by their charter, have the establishment, control and government of the parks of the city."

In the Lovingston case, all the police power of the city had been entirely taken away. The city had no agents left to execute it. The State government, for the purpose of the general good, not only of the people of East St. Louis, but for the people at large, who are perhaps more interested to have a proper police in such a place as East St. Louis, one of the greatest thoroughfares of the country, than the local and floating inhabitants of the place, had assumed the police power, and had chosen to execute it by its own officers, who were to be paid, however, by the city. It is not contended and never was that said commissioners were municipal officers. They are State officers, by which the State carries its will into effect, as the court admits in the McCagg case it has a right to do, when other elements than merely corporate ones are present. It is not a case of transferring proper municipal powers to strangers, as the court seem to have supposed, but a case where the State has, under the universally conceded power that it may mould, modify and abolish municipal corporations at pleasure, resumed the police power in its own hands, and has assessed—if the idea of taxation should still be held applicable to the transaction, which we can hardly believe—the city directly for the expense of such State police, by its own State agents.

The McCagg case, so far from supporting the decision in the Lovingston case, is, in its reasoning, subversive of it, and we present it as the strongest authority for saying that the law in question is constitutional throughout, and supports the information of the relators and appellants.

But should the court adhere to the ruling in the Lovingston case, still we insist the *legality* of the board of police, under the act of 1867, is not affected thereby. The expenses are to be paid in the first place by the city council, *out of the general fund of the city.*

It is only when the city fails to do so, that power is given by the act to issue certificates. This power the supreme court

has declared to be unconstitutional. The law can be executed by the commissioners applying for a mandamus. But even if no provision was made to pay the expenses at all, the law establishing the board might fail for want of officers willing to execute it, but would not be unconstitutional; and if the board would defray the expenses themselves, or if public spirited citizens would, it could be carried out in spite of want of supplies furnished by the city council. We say, then, that giving this decision the widest scope, it decided only that part of the law in question to be unconstitutional which the court say conferred the power of taxation on the commissioners, who are not municipal officers.

In the McCagg case the court did not decide the law appointing the park commissioners to be unconstitutional, because they expressly say, " If the city council, which has power to issue bonds, shall pass an ordinance directing the mayor, comptroller and city clerk to issue those bonds, and they should refuse, we might interfere and compel them by mandamus to do the required act," thereby clearly recognizing the board itself as a legal body.

Mr. WM. H. UNDERWOOD and Mr. L. H. HITE, for the appellee.

The information sets out the claim of relators to exercise all the police powers of the city of East St. Louis, under certain acts of the legislature of the State of Illinois alone, and charges generally that defendant has usurped said police powers.

The defendant sets up in his plea the city charter of East St. Louis, together with his appointment, qualification and commission as city marshal of said city, and denies that he exercised any police powers as is supposed in said information, except so far as is authorized by said city charter, the ordinances of said city passed in pursuance thereof, the orders of the city court, and his duties as such city marshal. The information is wholly indefinite in not mentioning any particular case in which said defendant had exercised police powers.

The court properly overruled the demurrer to said plea, sustained it to the information, and as the relators failed to ask leave to amend, final judgment was rendered for costs against them.

The tenth section of the fourth article of the charter of the city of East St. Louis, of 1869, Private Laws 1869, Page 896, Vol. 1, manifestly relates to officers elected by the people or appointed by the city authorities. It is not pretended in the information that the said relators ever made to the city council " a full and detailed statement of their receipts and expenditures three weeks before annual elections." Neither of said police acts of the legislature authorized these pretended police commissioners to collect money for said city. The word " receipts " in said section 10, is only applicable to officers appointed by the city council or elected by the people of said city, or by the police officers recognized by the corporate authorities of said city. The acts of February 22, 1867, and of March 27, 1869, attempting to appoint said police commissioners for the city of East St. Louis, with power to subject said city to unlimited indebtedness, is clearly in violation of the fifth section of the ninth article of the constitution of 1848. These police acts were not designed to appoint State officers by the Governor and Senate to enforce the police laws within the city of East St. Louis, but it was a plain attempt on the part of the legislature to appoint corporate city officers within and for said city, to exercise the powers properly belonging to said city, and all other cities in the State of Illinois.

When the constitution provided for towns and cities with corporate powers, it necessarily included the usual powers in such corporate city authorities to make and enforce police laws. Towns and cities are designed principally for such purposes. Cooley's Con. L. 189, etc., and 573.

Two questions were distinctly presented in the Lovingston case:

*First.* Had the legislature power to create, by appointment, said police commissioners as corporate authorities of said city, without requiring its assent?

*Second.* Had the legislature power to subject the said city to liability through said commissioners without such assent?

Both these questions were decided by this court in the negative, after mature deliberation and full and elaborate briefs presented by both parties.

The same points were carefully discussed by this court in the McCagg, Salomon and South Park Commissioners cases, reported in 51 Ill. 17–63 inclusive.

It is said by Chief Justice PARKER, in *Hampshire* v. *Franklin*, 16 Mass. R. 84: " It certainly must be admitted that, by the principles of every free government, and of our constitution in particular, it is not in the power of the legislature to create a debt from one person to another, or from one corporation to another, without the consent, express or implied, of the party to be charged, etc. It would be considered such a requisition must have been made by the legislature by mistake, and it would not be within the constitutional power of any judicial court to enforce such an act."

There is nothing in the constitution of 1848 about the election of constables, coroners or officers under township organization, school directors or trustees. Would it be pretended that it conforms to the spirit of that constitution to appoint such municipal officers by the Governor and Senate? Police commissioners were only tolerated in New York, because their constitution expressly provided that " all officers whose offices shall hereafter be created by law, shall be elected by the people or appointed as the Legislature may direct." *People* v. *Pinckney*, 32 N. Y. R. 381. In that case the court says: " It would not be competent for the legislature to create a new civil division of the State, and abrogate the local officers of the several counties that might compose it, and direct the appointment by the Governor and Senate of other officers limited to perform the same local functions only, although distinguished by new, more and extended titles. If that were so, the central power could draw to itself the appointment of all local officers not expressly provided for by the constitution itself. It is therefore

essential, in order to justify their appointment by the Governor and Senate on this ground, that the defendants should be, under the act, officers of a new civil division or district of the State, created for general permanent purposes of government in substance and fact, as well as in name." Ibid. 382 and 383. See, also, *People* v. *Draper*, 15 N. Y. R. 540, 550, 553; *Warner* v. *People*, 2 Denio R. 272.

If, then, so much of said act as attempts to create, by appointment of the Governor and Senate, said police commissioners corporate officers of said city, and so much of said act as enables them to subject said city to liability, are unconstitutional and void, the remaining parts of said acts can have no force or effect.

Any other theory would have left said city without any police powers—a city where the act in question shows that the legislature supposed that a strong police force was indispensable. If such police force were not paid by either the State or city, it could not exist.

In the Lovingston case, it was intimated by this court that the legislature might have levied a tax for corporate purposes, but the legislature did not. By the revenue article of the constitution of 1870, such levies are expressly inhibited; and our cities and towns are protected in the enjoyment of their local rights and liberties, dear to Anglo Saxons from time immemorial. Local and domestic rights and liberties, adverse to consolidated government in the State Legislature, or in Congress, or in Parliament, are clearly indicated in the constitutions of 1818 and 1848, and are better fortified by the constitution of 1870.

If the purpose of a statute is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portion. And if they are mutually connected with and dependent on each other as conditions, considerations or compensations for each other as to warrant the belief that the legislature intended them as a whole, and if all could not be

carried into effect the legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected, must fall with them. Cooley's Con. L. 178, 179, 180; *Warner* v. *Mayor of Charleston,* 2 Gray's (Mass.) R.; *State* v. *Commissioners, etc.* 5 Ohio, N. S. 507; *Hanson* v. *Racine,* 13 Wis. R. 398; *Jones* v. *Robbins,* 8 Gray's R. 338; *Campan* v. *Detroit,* 14 Mich. R. 272; *People* v. *Mellen,* 32 Ill. R. 181.

Where the substance of an act of the legislature is unconstitutional, the repealing clause in it of the prior act is also void for like reasons, and because the object of the repeal is to substitute what is unconstitutional. *Shepherdson* v. *Milwaukee, etc. R. R.* 6 Wis. R. 605; *State* v. *Judge, etc.* 11 Wis. R. 50; *Tims* v. *State,* 26 Alabama R. 165; *Sullivan* v. *Adams,* 3 Gray's R. 476; *Devoy* v. *Mayor, etc.* 35 Barb. R. 264; *Campan* v. *Detroit,* 14 Mich. R. 276; *Childs* v. *Shower,* 18 Iowa R. 261; *People* v. *Mellen,* 32 Ill. R. 181.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellants, on leave, through the State's attorney, filed an information in the nature of a *quo warranto* against appellee. It set out the act of the legislature, adopted on the twenty-second day of February, 1867, (Private Laws, vol. 2, p. 483,) to organize a police force for the city of East St. Louis, and the amendatory act of the twenty-seventh day of March, 1869, (Private Laws, vol. 1, p. 911,) under which they claim to have been appointed police commissioners for the city, in pursuance of their provisions. And they claim that, under these enactments, they have the sole and exclusive authority, through such persons as they might appoint, to enforce the police regulations of the city. They also charge, that appellee had intruded into the place of a police officer of the city, and that he refused to obey their orders and commands, and was unlawfully usurping the right to exercise police powers without an appointment from them, and wholly without legal authority.

Appellee made return to the information, and relies on the thirteenth section of article eight of the city charter, adopted on the twenty-sixth of March, 1869, (Private Laws, p. 907,) under which he alleged that he was duly appointed marshal, filed bond, received his commission and took the prescribed oath of office; that by virtue of his commission, and in pursuance to the act of the legislature and ordinances of the city, and the powers of the city court, he had faithfully performed the duties of city marshal, and not otherwise. To this return a demurrer was interposed and overruled by the court, but it was sustained to the information, which was dismissed. The record is brought to this court and the rendition of the judgment assigned for error.

The question of the constitutionality of the act organizing the police force has been ably defended by appellants' counsel, but we see no reason to arrive at a different conclusion from that announced in the case of *Lovingston* v. *Wider*, 53 Ill. 302. And in the view we take of this case, we regard it unnecessary to determine whether the entire act is invalid, or only such portions as authorized the police commissioners to issue certificates of indebtedness to bind the city. We can perceive no reason why appellee may not proceed to act in accordance with law, in the exercise of the powers and duties of city marshal, to the extent conferred by the city charter.

The general powers of the commissioners were granted to them in February, 1867, and appellee's powers and duties were prescribed in the thirteenth section of the eighth art. of the city charter of 1869. By that section, he and his deputies are declared to be the executive officers of the city court, and he and his deputy or deputies are given the same power and authority to execute all process issuing from the city court, as the sheriff of the county has in executing similar process from the circuit court. This delegation of power is more than two years after the adoption of the act to organize the city police. If it conflicts with the provisions of the former act, then the latter must prevail as the latest expressed will of the legislature.

His return shows that he was rightfully exercising the duties and powers of city marshal, and in doing so, infringed the rights of no other person.

The information fails to show in what manner, or in what class of cases appellee usurped the police power which had been entrusted to the commissioners.

The answer of appellee to the information presented a complete bar, and the court had the right, on overruling the demurrer, to render judgment for the defendant. No leave was asked to traverse the return, or to amend the information, and in such a case the court could not do otherwise than render judgment for the defendant. Appellants failed to show, as the record stood, that they had any right to recover. There is, so far as we can see, no error in this record, and the judgment of the court below is affirmed.

*Judgment affirmed.*