## Ernest W. Wider *et al.*

*v.*

## The City of East St. Louis *et al.*

1. TAXATION FOR CORPORATE PURPOSES—*and of the power to create a debt against a municipal corporation.* The legislature ordinarily has no power to impose a debt or levy a tax upon a municipal corporation without its assent, or to authorize persons not corporate officers to create a debt against the corporation, or to levy a tax therein, either directly or indirectly, without the consent of those to be affected thereby, or of the municipal authorities.

2. This rule, as announced in the case of *Lovingston* v. *Wider et al.* 53 Ill. 302, and applied to the action of the police commissioners of the city of East St. Louis under the act of 1867, is adhered to.

3. Same—*who are "corporate authorities."* The police commissioners, the appointment of whom is provided for by the act of 1867, entitled, "an act to establish a police force for the city of East St. Louis," are not corporate authorities of that city, and have no power to create a debt against the municipality without its consent.

4. Same—*of the levying of a local tax by the legislature.* The doctrine in reference to the possible existence of cases in which the legislature may impose a local tax without the consent of the corporate authorities—as in case of the failure of the police department of a city to provide reasonable security for life and property, and the State should undertake to supply such deficiency, and assess the expense thereof upon the city—has no application in a case where it is attempted to confer the power of creating a debt against the city, without its consent, upon police commissioners appointed under a law which was never submitted to nor approved by the people of the city or its corporate authorities.

5. City of East St. Louis—*of its power to create and pay a police force— effect of the act of* 1867. Under the charter of 1869 of the city of East St. Louis, the city has the power to appoint a marshal and his deputies, who may exercise police authority in the city and receive compensation from the city for such service, and this, notwithstanding the act of 1867 providing for the organization of a police force in that city without the intervention of the corporate authorities thereof. The latter act was not designed to deprive the city of the power given in its charter to maintain a police force, unless the provisions of the act should become efficient for that purpose.

6. Same—*legality of the police organization under act of* 1867. The police force organized in the city of East St. Louis by the police commissioners appointed under the act of 1867, no doubt have a legal right to act in the capacity of policemen, if they choose to do so gratuitously, unless discharged or disbanded by the commissioners. To this extent the law may be upheld.

Appeal from the Circuit Court of St. Clair county; the Hon. Joseph Gillespie, Judge, presiding.

The opinion states the case.

Messrs. G. & G. A. Kœrner, for the appellants.

Mr. W. H. UNDERWOOD and Mr. L. H. HITE, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill in equity, filed by appellants in the St. Clair circuit court against appellees, to enjoin the city from appointing policemen, or from paying them, or granting to them orders on the city treasurer for pay for such services.   The bill alleges that, on the twenty-second day of February, 1867, the general assembly adopted an act for the purpose of organizing a city police, and that complainants were appointed in pursuance of that act, and were acting as such police commissioners under it and an amendatory act adopted on the twenty-seventh day of March, 1869 ; that these acts gave to them the sole power and control over the police of the city, and prohibited the city from appointing a police force, or paying any other policemen, than those appointed by appellants ; that they had appointed a proper police force in accordance with the law ; that the city, through the mayor and city council, on the first day of July, 1870, passed an ordinance, authorizing the mayor to appoint officers, policemen and agents ; that the mayor had appointed a number of persons policemen, under the title of deputy marshals ; that they are informed that other persons were about to be appointed, and would be paid by the city council for performing police duty ; that the city will not pay the regular police force appointed by complainants under the act of February, 1867.   They claim to be entitled to receive all the public funds to be used in the payment of the police force, and make the city and its officers defendants, and pray process and an injunction.

The city filed an answer, admitting that the complainants had acted as a board of police commissioners, under the acts referred to, and that the acts attempted to confer upon them the sole control over the police of the city, and that the sixteenth

section of the act of February, 1867, declares that the city shall have no power to collect any money for the payment of a police force, other than that to be appointed by complainants, and prohibits any officer of the city from disbursing any money to pay such a force, unless it should be those appointed by complainants, but they deny that the act repeals the police power of the city. They deny that complainants have any right to act as police commissioners, and say that the act under which complainants claim to act has been. declared unconstitutional by this court.

They admit that the mayor was, on the first day of July, 1870, authorized by ordinance to appoint deputy marshals, as alleged, and charge that complainants had disbanded their force. They set up and rely upon the act of the twenty-sixth of March, 1869, reducing the charter of the city, and the several amendments thereto, into one act, as conferring all the corporate powers of the city upon the mayor and common council. Defendant Canty filed a demurrer to the bill, and a replication was filed to the answer of the city.

The demurrer was argued and sustained to the bill, the injunction dissolved and the bill dismissed, and a decree rendered against complainants for costs. An appeal was prayed and allowed, and the record is brought to this court, and errors are assigned, questioning the decree of the court below.

We are urged to review the grounds of the decision in the case of *Lovingston* v. *Wider*, 53 Ill. 302. After a careful examination of the arguments, and upon mature reflection, we are impelled to adhere to the grounds upon which that decision was placed. It was based upon a number of previous decisions, in which it was held, that the legislature ordinarily has no power to impose a debt or levy a tax upon a municipal corporation without its assent, or to authorize persons not corporate officers to, either directly or indirectly, create a debt or levy a tax, without the consent of those to be affected by it, or by their municipal authorities. These commissioners are

not corporate authorities, or, if they could be so considered, the people of the city, or the municipal authorities, have never consented that they shall create a debt for any purpose against the city. They, then, can have no claim to create such a debt which the city is bound to pay.

But it is urged that, in the case of *The People ex rel.* v. *The Mayor, etc. of Chicago,* 51 Ill. 17, it was said, that if a city became insurgent, and the government should use the military force to suppress the insurrection, the legislature, no doubt, might impose taxes to defray the expenses of a resort to military power. So, if the police department of a city should fail to furnish reasonable security to life and property, the State might provide such force and assess the city for such expenses, and that this case falls within what was there said. It is perfectly obvious that this case does not fall within the first of these supposed contingencies, as there is, and can be no pretense, that any military force was employed to suppress an insurrection.

In this case, the legislature has not levied a tax, even if the municipal authorities had failed to furnish a police force adequate to the protection of life and property, and the good order of the city, but, on the contrary, have required the appointment of commissioners, who are entrusted with the police government of the city, and empowered them to incur the expense of the same, to be imposed upon the city, to be paid by the issue of certificates of indebtedness, to be redeemed by taxation. These commissioners, not being corporate officers, and the law not having been submitted to and approved by the people of the city, or the corporate authorities, the case of *The People ex rel.* v. *The Mayor of Chicago, supra,* must govern. There are no facts in this case which can be held to distinguish it in principle from that, and we must hold, the debt incurred by them does not bind the city. Had the general assembly levied the tax for the purpose of paying such a police force, then it might be that what was said in that case in respect to the levy of taxes directly by the legislature, would be applicable.

We must look to the intention which moved the legislature to make the enactment. We see the controling motive was, to give the city a police force, and, we may fairly presume, a more efficient body than it had, or was likely to obtain, under their charter. It was not their purpose to leave the police they were attempting to create, without compensation, or the city without a police force, for this is negatived by the entire law then adopted; and as practical men, understanding the influences under which men act, they could never have supposed that a body of policemen could ever be obtained to act, beyond a limited period of time, without compensation, and they could not have designed, in the event that the provision for the compensation of the police they were then attempting to organize should fail, that the city should be deprived of the power to afford security to life and property. In other words, we must presume that they did not intend to repeal the provision of the charter, authorizing the city to maintain a police force, unless the force they were creating should be organized and continue to act as such.

Suppose the governor had failed to obtain the consent of these men, or others, to act as commissioners under this act, does any one suppose that the power of the city to appoint and pay a police force would have ceased? And it is because the general assembly manifestly did not intend to leave the city without such protection. And when so much of that act is held to be inoperative as to render the entire act nugatory, in what consists the difference? We are unable to perceive. It is manifest that the legislature did not design to deprive the city of such protection, or they would not have enacted the law, under which appellants claim to act, without making, or attempting to make, compensation to them and their appointees. Nor would they have withdrawn the power from the city, unless they had supposed they had provided other equal or more efficient means of preserving the good order of the city. Having failed to provide such means, we must hold that this provision of the act to create the police force has fallen with the other.

The thirteenth section of article eight of the city charter of 1869, authorizes the appointment of a city marshal and deputies, and provides, that he shall qualify and be commissioned as county constables are, and he and they shall have the same powers in executing the process of the city court as the sheriff of St. Clair may exercise in executing process from the circuit court.  When it is remembered that all offenses are required to be prosecuted in that court, and the marshal and his deputies may execute all of its process, and when it is further considered, that he is to be commissioned as constables are, what else can we infer, than he is to be invested with all the powers pertaining to that office?  All know that a constable has and is compelled to exercise police powers. He is charged with maintaining the peace.  It then follows that the marshal and his deputies are, under the charter of 1869, invested with police powers to the same extent as are constables, who possess as great police powers as do city policemen, unless it be by special legislation.  Hence we conclude, that the city marshal and his deputies were legally appointed, and may be lawfully paid by the city for their services.  We have no doubt that the police force organized by appellants have a legal right to act, if they choose to do so gratuitously, unless they have been discharged or disbanded by appellants.  To that extent the law under which they claim to act may be upheld.

We are, for these reasons, of opinion that the court below acted correctly in dismissing complainants' bill, and the decree must be affirmed.

*Decree affirmed.*