## FREDERICK HINZE *et al.*

### *v.*

### THE PEOPLE *ex rel.* Halbert.

1. METROPOLITAN POLICE ACT *for East St. Louis — of its constitutionality.* The "Act to establish a police force for the city of East St. Louis," in force February 22, 1867, (Private Laws of 1867, vol. 2, p. 483,) and the act amendatory thereof, in force March 27, 1869, (Private Laws of 1869, vol. 1, p. 911) are unconstitutional and void.

2. Not only are those portions of these acts unconstitutional which purport to authorize the police commissioners thereby attempted to be created, to levy taxes and to create indebtedness against the corporation, because the commissioners were not elected by the people of the municipality, nor appointed in any mode to which the people had given their assent, but also that portion of the acts purporting to create a police force for the city is unconstitutional and void. The acts were intended to provide an entire system,—and the power not existing to provide a support for the police force thus attempted to be created—that power involving the power of taxation—the authority to create such a police force would become nugatory ;—so the acts in their entirety must fall.

3. CONSTITUTIONAL LAW—*when statute partially valid and when wholly void.* If a statute attempts to accomplish two or more objects and is void as to one, it may still be in every respect complete and valid as to the other; but if its purpose is to accomplish a single object only and some of its provisions are void, the whole must fall, unless sufficient remains to effect the object without the aid of the invalid portion; and if they are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected must fall with them.

4. SAME—*cities or towns adopting special or local laws.* Since the adoption of the present constitution it is not competent for a city, town or village to adopt

a special or local law and thus make it a part of its charter, which had been enacted by the General Assembly previous to the adoption of the present constitution, but not prior to that time adopted by the city, town or village. Such laws are by implication repealed by the present constitution.

5. OFFICE AND OFFICERS—*rights and duties must be reciprocal.* There can be no legal right in an individual to hold an office or trust unless there is also a corresponding legal right in the public to compel performance of the duties with which the office or trust is charged.

6. QUO WARRANTO—*when it lies.* If the law by which it is claimed an office is created is invalid because in contravention of the constitution, the person who assumes to hold or exercise such office must necessarily do so unlawfully, and hence the writ of *quo warranto* lies against him, under sec. 1 of the *quo warranto* act.

7. AMENDMENT *of information in quo warranto.* The information in a proceeding by *quo warranto* is amendable, in the discretion of the court, under the statute.

APPEAL from the Circuit Court of St. Clair county; the Hon. GEORGE W. WALL, Judge, presiding.

On the 29th day of July, 1878, J. B. Bowman, mayor of the city of East St. Louis, presented a petition to Hon. W. H. SNYDER, one of the judges of the third judicial circuit, for leave to file an information in the nature of a *quo warranto* against Michael Murphy and Frederick Hinze, claiming to act as police commissioners for the city of East St. Louis—and, by consent of the defendants, such leave was granted. An information was accordingly filed on the 9th of August, 1879, in the office of the clerk of the circuit court of St. Clair county, in which J. B. Bowman was relator. Subsequently, the information was amended by striking out the name of J. B. Bowman as relator and inserting in lieu thereof that of R. A. Halbert, and also by interlining these words which did not appear in the information as originally filed,—" there being no law authorizing said office." The information as thus amended is as follows :

"STATE OF ILLINOIS, }
    *St. Clair County.* }

Of the September term, 1878, of the circuit court of St. Clair county.

And now comes James K. Edsall, Attorney General of the State of Illinois, on relation of R. A. Halbert, a tax-payer of the city of East St. Louis, and in the name and by the authority of the people of the State of Illinois gives the court to understand and be informed that on the 14th day of January, 1878, at the city of East St. Louis and county of St. Clair aforesaid, Frederick Hinze and Michael Murphy respectively did unlawfully usurp and hitherto have continued and now do unlawfully usurp the office of a police commissioner of the city of East St. Louis in said county and State, there being no law authorizing such office,—contrary to the form of the statute in such case made and provided, and against the peace and dignity of the People of the State of Illinois.

And the said Attorney General, on the relation aforesaid, in the name and by the authority aforesaid, gives the court further to understand and be informed that on the 14th day of January, 1878, at the said city of East St. Louis and county of St. Clair aforesaid, the said Frederick Hinze and Michael Murphy did respectively unlawfully hold and exercise the powers and the duties of police commissioners of said city of East St. Louis, and from thence hitherto and still do respectively unlawfully hold and exercise the powers and duties of said office, there being no law authorizing such office,—contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Illinois.

JAS. K. EDSALL,
*Attorney General of Illinois.*
A. S. WILDERMAN,
R. A. HALBERT,
JAMES M. HAY, *for relator."*

The defendants moved to strike the information from the files because — 1st. Amendments required by the court have been interlined upon the original information. 2d. The information as amended was never signed by the State's attorney, or Attorney General. But the court overruled the

motion and refused to strike the information from the files, and the defendants excepted.

The defendants then filed two pleas. The first, after the formal introduction, sets forth substantially that the corporate authorities of the city of East St. Louis, aforesaid, did pass a resolution, duly published before the 11th of January, 1878, requesting the Governor of the State of Illinois to appoint, in pursuance of an act of the General Assembly of said State, entitled "An act to establish a police force for the city of East St. Louis," in force February 22, 1867, and an amendment thereof approved March 27, 1869, police commissioners for said city; that in compliance with said request the said Governor did, on the 11th day of January, appoint defendants to be two of the said commissioners and commissioned them on the same day, and that they duly did qualify as such commissioners. Defendants aver that ever since said appointment the corporate authorities as aforesaid have in all things recognized said defendants, and their appointees made in pursuance of said acts, as the sole police force of said city, and have consented to the exercise by them of the duties of the officers of police commissioners of said city, and that defendants do still hold and exercise the same, and that this is their warrant and authority, etc.

The second plea, after stating request of the corporate authorities to the Governor as before, alleges in addition, that the said acts establishing the police force for the city of East St. Louis were recognized as binding upon the city of East St. Louis by an act passed by the General Assembly entitled "An act to amend the city charter of East St. Louis, and consolidate all former charters," March, 1869. It then sets out the appointment, the commissions of defendants, their having qualified as in the first plea, the recognition of the city authorities of their office, and that the said city council have passed ordinances appropriating money for their pay up to the first of December, 1878, and that since their appointment by the Governor the corporate authorities of the city have dis-

pensed with and dismissed all persons heretofore acting as police-men or special marshals, and that the city of East St. Louis is left wholly under the protection of the board as constituted by said defendants and the protection of the police officers approved by them, and that this is their warrant, etc.

To these pleas there were demurrers, which the court, at the January term of the St. Clair circuit court, 1879, the Hon. G. W. WALL presiding, the venue having changed from Hon. W. H. SNYDER, sustained, and the defendants electing to stand by their pleas, the court rendered judgment upon said pleas, adjudged the said defendants guilty, and rendered judgment of ouster.

Messrs. G. & G. A. KŒRNER, and Mr. CHAS. W. THOMAS, for the appellants:

It is contended on behalf of the relator, in support of the ruling of the court below, that the act of February 22, 1867, known as the Metropolitan Police law, is, in all its parts, un-constitutional and void.

The act under review is naturally divisible into two parts, one of which establishes a board of police commissioners for the city of East St. Louis, and prescribes the manner of their appointment, and of that of their subordinates, and the duties of all these, and the other of which provides for the issue of certificates of indebtedness of the city by the board so created to pay the force thus brought into existence, in case the municipal authorities fail to provide for their payment.

This court has upon several occasions passed upon the constitutionality of that portion of the act relating to the powers of the board to create an indebtedness of the city for the purpose of maintaining the police force authorized by the act, and has in every case held that the board had no power, without the consent of the corporate authorities of the city, to create any such indebtedness, and that so much of the act as authorizes the board to issue certificates of indebtedness in the name of, and for the purpose of binding the city without

its consent, is unconstitutional and void. *Lovingston* v. *Wider*, 53 Ill. 302; *People ex rel.* v. *Canty*, 53 id. 33; *Wider* v. *The City of East St. Louis*, 55 id. 133.

In these cases the court did not decide the whole law to be unconstitutional, but only denied the authority of the commissioners appointed under the act to tax the people of the city without the consent of the corporate authorities. On the contrary, the court, in the case last cited, *Wider* v. *The City of East St. Louis*, clearly recognize the validity of the act upon the question now presented, that is, the power of the legislature to establish a board of police commissioners, and to prescribe the manner of their appointment, and that of their subordinates, and to prescribe their duties. Upon this question the court say:

"We have no doubt that the police force organized by appellants have a legal right to act, if they choose to do so gratuitously, unless they have been discharged or disbanded by appellants. To that extent the law under which they claim may be upheld."

The court, in thus announcing its opinion of that portion of the law which merely establishes the force, was doubtless in harmony with the authorities upon the subject of the legislative control of the State police in the absence of the constitutional restrictions. It can not now be contended that the legislature has no right to establish and maintain in any portion of the State any such force for the preservation of the peace as it may deem adequate for that purpose, and were it not for the provision relating to the creation of corporate debts by corporate authorities, construed in the cases above cited, the right of the legislature to compel any municipality to pay the charges of a State police in its boundaries would be unchallenged. The legislature is vested with all powers of government not denied to it by the constitution, and that instrument contains nothing which can be construed to take away from the law-making power the right to establish and

maintain, either by general or special law, a police force in any city, or all the cities in the State.

The people, in framing the constitution, committed to the legislature the whole law-making power of the State which they did not expressly or impliedly withhold. Plenary power in the legislature, for all purposes of civil government, is the rule. A prohibition to exercise a particular power is an exception. In inquiring, therefore, whether a given statute is constitutional, it is for those who question its validity to show that it is forbidden. *People* v. *Draper,* 15 N. Y. 543.

Mr. A. S. WILDERMAN, Mr. R. A. HALBERT, Mr. JOHN B. BOWMAN, and Mr. R. A. D. WILBANKS, for the relator:

It seems to be conceded by the counsel for appellants that in respect of that portion of the act which assumes to control the subject of taxation, or the creation of a debt which must ultimately be paid by taxation, for the support of the police force of the city, regardless of the wishes of the municipality, this court has already decided the act to be unconstitutional; yet the counsel contend that portion of the act which provides for the appointment of a board of police commissioners may be separated from the other portion and be held valid. A review of the cases cited by appellants will show, we think, that the whole act has, substantially, been held by this court to be invalid. The particular questions involved in those cases were of such character that when decided adversely to the validity of that portion of the act having immediate reference to them, the whole act must necessarily become nugatory. The several parts of the act are so essential to each other that all must stand or fall together.

Cooley, in his work on Constitutional Limitations, lays down the rule as follows:

"Where a law creates a system, and the part which is legal can not stand by itself without the aid of the rest, or is so much affected or disturbed by the rejection of the rest that it would not be supposed the legislature would have adopted it

by itself, the whole shall be rejected, because the part can not be regarded as the expression of the legislative will."

The leading case is *Warren* v. *Mayor and Aldermen of Charleston*, 2 Gray, 84. There the court held that, "When the parts of a statute are so mutually connected and dependent, as conditions, considerations or compensations for each other, as to warrant a belief that the legislature intended them as a whole, and that if all could not be carried into effect the legislature would not pass the residue independently, if some parts are unconstitutional and void, all the provisions which are thus dependent, conditional or connected must fall with them."

This is declared to be the law in other States. *State* v. *Commissioners of Perry County*, 5 Ohio St. 497; *Tims* v. *State*, 26 Ala. 165; *Campau* v. *Detroit*, 14 Mich. 276; *Garrard County* v. *Kentucky River Navigation Company*, Court of App. Ky. 10 Am. L. Reg. (N. S.) 151. And in this State, *People* v. *Cooper*, 83 Ill. 585. See also, *State ex rel.* v. *Supervisors of Milwaukee*, 25 Wis. 339; *State* v. *Dousman*, 28 Wis. 521.

Upon the principal question involved in that portion of the act now sought to be preserved,—the power of the legislature to appoint for the municipalities the officers who are to manage the property, interests and rights in which their own people alone are concerned,—we refer to the opinion of Mr. Justice COOLEY, in *The People* v. *Hurlbut*, 24 Mich. 107.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Before proceeding to the real point in controversy here, it is necessary to pass upon certain preliminary objections that have been urged against the jurisdiction of the circuit court.

It is contended that court had no jurisdiction because the existence of the office, and not the right simply to hold the office, is questioned.

The statute (Rev. Stat. 1874, p. 787, § 1,) provides that the writ shall lie, as well where any person unlawfully holds

or executes any office or franchise, as where any person shall usurp or intrude into any office or franchise. If the law by which it is claimed the office is created is invalid and of no effect because in contravention of the constitution, any person who assumes to hold or execute such office must necessarily do so unlawfully, and therefore come literally within the language of the statute,—that is, "unlawfully hold and execute such office." Whether there can, legally speaking, be a usurpation or intrusion, when there is no lawful office, is not, therefore, a material inquiry. Although there may have been no unlawful usurpation or intrusion, there was an unlawful holding and executing of an office, if the law by which it is claimed to have been created is unconstitutional.

It is also contended that the court erred in refusing to strike the information from the files because of the amendments made after it was filed.

Even if we should regard it as material, it is sufficient here to say that it does not appear that the amendments were not made with the knowledge and approbation of the Attorney General. His name appears, in connection with other attorneys, at the commencement of the proceeding, and, in the absence of evidence to the contrary, we must assume that all subsequent steps in the cause were taken with his knowledge and approbation. We regard all the amendments as more formal than substantial. Whether Halbert or Bowman should be relator was of no manner of consequence to the defendants, and the *reason* for charging that the defendants "unlawfully held and exercised" the office of police commissioners, etc., is obviously no part of the *charge.*

Informations were amendable at common law. *Rex v. Wilkes,* 4 Burrows, 320, (2527;) *Truitt v. The People,* 88 Ill. 518.

The amendments were clearly within the discretion of the court, under the very liberal provisions of our statute in that regard, and it can not be held error to refuse to strike the information from the files after they were made.

The real contest here is in regard to the constitutionality of the "Act to establish a police force for the city of East St. Louis," in force February 22, 1867, (Priv. Laws of 1867, vol. 2, p. 483,) and of the act amendatory thereof, in force March 27, 1869, (Priv. Laws of 1869, vol. 1, p. 911.)

The first section of the first named act declares that no ordinance theretofore passed, or that may thereafter be passed by the city council of East St. Louis, shall in any manner conflict or interfere with the powers or the exercise of the powers of the board of police commissioners of the city of East St. Louis, as thereinafter created, and prohibits the city and any officer or agent thereof, or of the mayor, from in any manner impeding, obstructing, hindering or interfering with "the said board of police, or any officer or agent or servant thereof or thereunder."

By the second section, so much of the city charter and ordinances as authorized the mayor and city council to appoint, pay and arm the police of said city, and protect the said police in the discharge of their duty, is repealed.

The third section establishes a board of police within and for the city of East St. Louis, to be called the "Police Commissioners of the City of East St. Louis," prescribes their qualifications and amount of salary, and fixes their term of office, etc.

The fourth section directs that such commissioners shall be appointed by the Governor, by and with the advice and consent of the Senate.

The fifth section confers ample powers for all purposes of police within the city.

The sixth section, to enable them to discharge the duties enjoined by the fifth section, authorizes and requests the board to "appoint, enroll and employ a permanent police force for the city," and to arm and equip them as they shall deem necessary.

The seventh section prescribes the officers of the police force to be so appointed and enrolled, etc.

The eighth and ninth sections relate to the amount of compensation to be paid to policemen and officers.

The tenth section provides for the filling of vacancies in the police force, removals, etc.

The eleventh section prohibits policemen from receiving any gratuity or compensation for service without the consent of the board.

The twelfth section authorizes the board to provide themselves with offices, furniture, etc., to have a common seal, and to divide the city into police districts.

The thirteenth section makes it the duty of the sheriff of St. Clair county, whenever called upon by the board for that purpose, to act under their control for the preservation of the public peace. It also confers power on the board to assume the control and command of all conservators of the peace of the city of East St. Louis, whether sheriff, marshal, constable, policeman or others, and imposes penalties for refusal to submit to such subordination, etc.

The fourteenth section makes it the duty of the board, at its first meeting, to inform the city marshal, captain of police and other officers of the police force of the city of East St. Louis that they require their attendance upon them and obedience to their orders. And from and after such first meeting of the board, the whole of the then existing police force of the city of East St. Louis is required to pass under the exclusive management and control of said board, and shall continue, subject to removal or suspension at the discretion of the board, and with power in the board to fill vacancies, until the board shall publicly declare that the organization of the police force created by that act is complete. And thereafter " all ordinances of the city of East St. Louis are annulled and declared void, so far as they conflict with this act or assume or confer upon the mayor or any other person the power to appoint, dismiss, or in any way or to any extent employ or control any police force organized or to be organized under such ordinances or any of them; and from and after such pub-

lic declaration, as aforesaid, the police force organized, or which may be organized under such ordinances or any of them, shall cease to exist, and all its functions and powers to be at an end."

The fifteenth section provides for the enforcement of the authority of the board.

The sixteenth section makes it the duty of the board, with all convenient speed, after qualifying, etc., "and annually thereafter, to estimate what sum of money will be necessary for each fiscal year, to enable them to discharge the duties " by the act imposed upon them, and requires that they certify the same to the city council of the city of East St. Louis, who are thereby required in the first appropriation ordinance of the fiscal year to set apart and appropriate the amount so certified, out of the general fund of the said city of East St. Louis; and in case the city council shall fail to make such appropriation, or the disbursing officer or officers shall not forthwith pay over the amount of such requisition, as made and required, it is made the duty of the board to issue certificates of indebtedness, in the name of the city of East St. Louis, in such amounts as they may deem advisable, for the amount of such requisitions respectively, bearing interest, etc.,—which certificates are declared to be as binding upon the city and "as recoverable against it as if the city council of East St. Louis had authorized" them. And the city council of the city of East St. Louis is denied power to levy or collect any tax or appropriate any money for the payment of any police force other than that to be organized and employed under the provisions of the act; and the officers of the city are prohibited from making any payments to any other police force, etc., etc.

The seventeenth section requires the board to keep a journal of their proceedings, and report to the city council, etc.

The eighteenth section repeals all acts and parts of acts and charter provisions, and all ordinances of the city of East St. Louis, conflicting with that act.

The first section of the amendatory act of March 27, 1869,

relates to the times at which the officers of the police force shall be entitled to receive payment.

The second section applies the provisions of section fifteen to every member of the city council, etc.

The third section relates to the circulation of the certificates provided to be issued by the sixteenth section of the original act, and makes them receivable for dues to the city at their par value.

The fourth section declares the police commissioners and the officers and policemen appointed by them to be public officers, and makes resistance to them punishable under the criminal code, as resistance to other officers is.

The fifth section authorizes the board to appoint a turnkey or doorkeeper at each police station and fix his compensation, etc.

The sixth section relates to the certificates theretofore issued by the board and declares them valid.

The seventh section confers power upon the board and makes it their duty to abate nuisances, etc.

The eighth section repeals all conflicting acts, and declares that this, and the act to which it is an amendment, shall be public acts.

The validity of different provisions of these acts has been several times discussed before this court and decisions rendered affecting them.

The first case was *Lovingston* v. *Wider et al.* 53 Ill. 302. A bill was filed by a tax-payer setting forth the substance of the first act and averring that the city council had refused to recognize the authority of the police commissioners, and that they had issued large amounts of certificates and sold them at twenty cents on the dollar, and were continuing to do so. The bill alleged the unconstitutionality of the law, and prayed an injunction against the commissioners, who were made defendants. The cause was heard on demurrer to the bill, and the court below sustained the demurrer and dismissed the bill. This court affirmed that decree solely upon the ground that

the complainant was not injured by the action of the police commissioners, no tax having been levied for the payment of the certificates and it being impossible that such tax could be levied by any authority other than that of the city council. The court, nevertheless, decided the main question, because the pleadings were designed to present it, and it was deemed highly important to the people of the city of East St. Louis that it should be decided.

It was then said: "The validity of this act can hardly be considered an open question in this court since the decision of *The People ex rel. McCagg* v. *The Mayor of Chicago*, 51 Ill. 17, *The People ex rel. Wilson* v. *Salomon*, id. 37, *The People ex rel. South Park Commissioners* v. *The Common Council of Chicago*, id. 58, and *Harward* v. *St. Clair Drainage Company*, id. 130." And after giving the gist of those decisions, it was added: "These cases, in our judgment, are conclusive against the validity of the act under consideration. These police commissioners are not the corporate authorities of East St. Louis, and, therefore, can have no power of taxation. They are not elected by the people of that city, nor appointed in any mode to which the people have given their assent. The act creating them has never been accepted by the people or by the city council, but, on the other hand, as alleged in the bill, the council has constantly denied the authority of the commissioners. So far from being corporate authorities, in the sense in which this court has construed that phrase, these commissioners, by the act in question, are forced upon the people of this municipality, without reference to their wishes or consent, to hold over them the tremendous power of unlimited taxation, and in the exercise of this power, to be placed entirely beyond the reach of those whose property is at their mercy. For the reasons given in the cases cited, such legislation can not be reconciled with the constitution."

The next case was, *The People ex rel.* v. *Canty*, 55 Ill. 33. There an information was filed by the State's attorney, in the nature of a *quo warranto*, upon the relation of Wider, Schall

and Barrowman, police commissioners, in which it was charged that Canty had unlawfully usurped police powers in the city of East St. Louis, pretending to be authorized thereto by certain ordinances of the city council, and that he was acting under the direction of the mayor of the city, and had intruded into the office of police officer, etc.

Canty relied, in his return, upon an appointment by the city council to the office of city marshal, and an act of March 26, 1869, entitled " An act to reduce the charter of the city of East St. Louis and the several acts amendatory thereof into one act, and to revise the same," and certain ordinances of the city council pursuant thereto.

To this return a demurrer was filed, which was sustained to the information, and the proceeding dismissed with costs.

The court was asked, in argument, to review and overrule its decision in *Lovingston* v. *Wider, supra.* But the decision of the court below was affirmed, and it was said : " The question of the constitutionality of the act organizing the police force has been ably defended by appellant's counsel, but we see no reason to arrive at a different conclusion from that announced in the case of *Lovingston* v. *Wider,* 53 Ill. 302." The next case was *Wider et al.* v. *The City of East St. Louis,* 55 Ill. 133. In that case, Wider and others, claiming to act as police commissioners, filed their bill in chancery in the court below against the city of East St. Louis to enjoin the city from appointing policemen, or from paying them, or granting to them orders on the city treasury for pay for such services.

A demurrer was sustained to the bill, by the court below, and that decree was here affirmed. The court re-endorsed *Lovingston* v. *Wider, supra,* and held that the provisions to create a police force fell with those to create charges on the city to sustain such force.

The last case was *City of East St. Louis* v. *Witts,* 59 Ill. 155, which was an action of debt brought against the city on a certificate of indebtedness issued by the police commissioners. It was held, following the previous cases, that the certificate

was void and created no charge against the city, and consequently that there could be no recovery.

Appellants' counsel seem to lay some stress on language used by the judge, by way of argument, in *People ex rel. Mc-Cagg* v. *The Mayor, etc.,* 51 Ill. 17. He said: "However strong the argument in favor of so construing it, there nevertheless may be cases where the legislature, without the consent of the corporate authorities, might impose taxes, local in their character, if required by the general good government of the State, because such taxes would not be merely and only for corporate purposes, as, if one of the cities of the State should be insurgent, requiring the interposition of the military power, it will not be denied the State, on quelling the insurrection, could impose taxes upon the city to defray the expenses of a resort to military power. So, if the police department of a city should fail to furnish reasonable security to life and property, the State, undoubtedly, might provide such force, and assess the city for the expenses."

It is to be observed there was no question of the liability of a municipality for expenses incurred in suppressing insurrection or in furnishing security to life and property when this language was used. As before observed, its use was in argument only, and the cases put were merely supposed for the purpose of illustrating and aiding in the argument. The question was not one that had been argued, and the objections that might have been urged were not noticed. But this language was quoted by counsel for Wider and others, in *Wider et al.* v. *City of East St. Louis, supra,* for precisely the same purpose that it is here, and it was thus answered, and the answer is equally pertinent and conclusive now as then: "It is perfectly obvious that this case does not fall within the first of these supposed contingencies, as there is and can be no pretense that any military force was employed to suppress an insurrection. In this case, the legislature has not levied a tax, even if the municipal authorities have failed to furnish a police force adequate to the protection of life and property, and the

good order of the city, but, on the contrary, have required the appointment of commissioners, who are entrusted with the police government of the city, and empowered them to incur the expense of the same, to be imposed upon the city, to be paid by the issue of certificates of indebtedness to be redeemed by taxation: These commissioners, not being corporate officers, and the law not having been submitted to and approved by the people of the city, or the corporate authorities, the case of *The People ex rel.* v. *Mayor of Chicago, supra,* must govern."

It is contended, however, that although these acts are to be regarded as unconstitutional in so far as they impose burdens upon the municipality to be discharged by taxation, yet, in all other respects, they are free of constitutional objection, and, it is said, this is settled by *Wider* v. *The City of East St. Louis, supra,* in which the court said: " We have no doubt that the police force organized by appellants have a legal right to act, if they choose to do so gratuitously, unless they have been discharged or disbanded by appellants. To that extent the law under which they claim to act may be upheld."

It will be remembered that the acts had been condemned, because of their imposition of burdens to be discharged by taxation, in *Lovingston* v. *Wider, supra;* and that in *Wider et al.* v. *City of East St. Louis* the purpose of the bill was to enjoin the city from appointing policemen and from paying them.

Now, we have seen, by the analysis of the acts that we have given, the appointment of policemen by the city is prohibited by the acts, in language equally as unambiguous and positive as that by which the police commissioners are called into being. An indispensable part of the system was that the police commissioners were to have *exclusive* charge of the appointment, control, etc., of the police force. To that end, not only was power expressly given, but all acts conferring power on the city council, etc., in regard to the appointment and control of the police, were repealed. It was held that inasmuch as the law was unconstitutional which

gave to the police commissioners power to fix the compensation and provide for the payment of policemen, so that must be unconstitutional which gave to the commissioners *exclusive* control of the appointment and control of the police force.

It was said, (p. 138): "We must look to the intention which moved the legislature to make the enactment. We see the controling motive was to give the city a police force, and, we may fairly presume, a more efficient body than it had, or was likely to obtain under their charters. It was not their purpose to leave the police they were attempting to create without compensation, or the city without a police force, for this is negatived by the entire law then adopted; and as practical men, understanding the influences under which men act, they could never have supposed that a body of policemen could ever be obtained to act, beyond a limited period of time, without compensation; and they could not have designed, in the event that the provision for the compensation of the police they were then attempting to organize should fail, that the city should be deprived of the power to afford security to life and property.    *    *    *

"Suppose the Governor had failed to obtain the consent of these men, or others, to act as commissioners under this act, does any one suppose that the power of the city to appoint and pay a police force would have ceased? And it is because the General Assembly manifestly did not intend to leave the city without such protection. And when so much of that act is held to be inoperative as to render the entire act nugatory, in what consists the difference?    *    *    *    Having failed to provide such means," (*i. e.* other equal or more efficient means of preserving the good order of the city,) " we must hold that this provision of the act to create the police force has fallen with the others."

Here, then, is an express decision that the provision creating the police force is unconstitutional. The remarks quoted are not *obiter dicta,* for if the provisions creating the police act are valid the appellants were entitled to their injunction.

The city council, in that event, was not authorized to appoint or pay policemen. It would seem too plain a proposition to need the aid of argument that the unmistakable intent of the legislature was to provide an entire system to take the place of the then before existing police system. The two were repugnant to and utterly inconsistent with each other,—and it is impossible to suppose that it was ever intended by rational men that parts of such incongruous systems were to be blended together. No man can be compelled to give his time and labor, any more than his tangible property, to the public without compensation; and, since there is no mode by which policemen appointed by the commissioners can be compensated, it follows that no one, even after accepting their appointment, can be compelled to perform any police duties.

But there can be no legal right in an individual to hold an office or trust, unless there is also a corresponding legal right in the public to compel performance of the duties with which the office or trust is charged. This would seem to be a legal truism and to need no demonstration.

If the appointment must be vain and fruitless, the right to appoint must be equally so.

It is not reasonable to suppose that a legislature would call into being a board of police commissioners, merely for the purpose of investing it with such a mere shadow,—especially where the municipality is already supplied with a police force whose action can be coerced to meet the public necessities.

The rule quoted from Cooley's Constitutional Limitations, in *The People ex rel.* v. *Cooper et al.* 83 Ill. 595, is conclusive as to the unconstitutionality of these entire acts:

" If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other ; but if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fall, unless sufficient remains to effect the object without the aid of the invalid portion; and if they are so mutually connected with and dependent on each other as con-

ditions, considerations, or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected, must fall with them."

What was intended by the language quoted and relied upon by appellants' counsel was, simply, that the acts of such policemen would be good as those of *de facto officers.* It was not intended to say that the police commissioners had a legal right to act and make appointments of policemen under a law which was held to be unconstitutional.

Waiving the question just discussed, however, it is contended the previous decisions based their objection of unconstitutionality upon the ground that the acts creating the board of police commissioners were never accepted by the people or the city council, and that had there been such acceptance, a different conclusion would have been reached;—whereas the pleas here aver that the corporate authorities of the city of East St. Louis passed a resolution requesting the Governor to appoint such commissioners pursuant to the two acts relating to that subject, and that, in compliance with that request the Governor did, on the 11th day of January, A. D. 1878, appoint such commissioners,—and it is averred that ever since this appointment the corporate authorities have in all things recognized said defendants and their appointees " etc., etc. And this, it is contended, is an acceptance by the proper municipal authority of the acts.

But this is not a local option law. Its vitality is not made to depend upon the acceptance or rejection of the local municipality, but, as we have seen, it purports to become effective, notwithstanding the will of the municipality. It was either valid or invalid when enacted—and, since we have seen it was invalid then, it can not become valid by any future action of the municipality.

In the cases referred to by counsel for appellants either the

acts contained provisions that were valid, notwithstanding the invalidity of others, or the unconstitutional objection here urged was obviated by vesting the power of laying the burdens to be discharged by taxation directly on the corporate authorities of the municipality—which was not done here.

We are, moreover, of opinion that since the adoption of the present constitution it is not competent for a city, town or village to adopt a local or special law, and thus make it a part of its charter, which had been enacted by the General Assembly prior to the adoption of the present constitution, but not, prior to that time, adopted by the city, town or village. Such laws, in our opinion, are, by implication, repealed by the present constitution. See *People ex rel.* v. *Cooper*, 83 Ill. 585; *Guild, Jr.* v. *Chicago*, 82 id. 473.

The pleas do not allege an adoption of the acts before the 8th of August, 1870—the day the present constitution went into force.

We see no cause to disturb the judgment below, and it is, therefore, affirmed.

*Judgment affirmed.*